UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LEONARDO APONTE,

                                          **Plaintiff,**

                    -against-

5TH AVE. KINGS FRUIT & VEGETABLES CORP.,
doing business as 5TH AVE. KINGS SUPERMARKET,
et al.,

                                  **Defendants.**
------------------------------------------------------------------------x

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

**20-CV-5625**

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

       On November 18, 2020, plaintiff Leonardo Aponte ("plaintiff") commenced this action

against defendants 5th Ave. Kings Fruit & Vegetables Corp. ("5th Ave. Kings"), doing business

as 5th Ave. Kings Supermarket, and Adel Kassim ("Kassim") (referred to collectively as

defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201

*et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, as amended

by the Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195.  See Complaint (Nov.

18, 2020) ("Compl."), Electronic Case Filing Docket Entry ("DE") #1.[1]  More specifically,

by his Complaint, plaintiff sought to recover unpaid overtime and minimum wages pursuant to

the FLSA and NYLL, unpaid hours worked under the FLSA and NYLL, liquidated damages,

pre-judgment interest, post-judgment interest, statutory penalties for record-keeping violations,

and attorney's fees and costs.  In December 2021, plaintiff dropped his minimum wage claim

---

[1] Prior to trial, plaintiff voluntarily dismissed his claims against defendant 20/20 Grocery and Deli Corp., on
consent.  See Minute Entry (Dec. 16, 2021) ("12/16/21 Minute Entry"), DE #23.

under the FLSA, while retaining his NYLL minimum wage claim, see 12/16/21 Minute Entry; Proposed Pretrial Order (Dec. 11, 2021) ("PTO") at 7, DE #22, and withdrew his claim that he was not paid for his last three weeks of work, see PTO at 7.  With the parties' consent, this action was assigned to the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).  See Consent to Jurisdiction by US Magistrate Judge (Nov. 17, 2021), DE #20.

After the parties waived a jury, see Letter Accepting Magistrate to preside over case and trial and agreement as to bench trial (Nov. 17, 2021), DE #18, this Court conducted a one-day bench trial on April 22, 2022, during which both individual parties (and one non-party witness) testified and plaintiff submitted documentary evidence, see Minute Entry (Apr. 22, 2022), DE #29; Exhibit List (Apr. 22, 2022), DE #30.  In the course of the trial, the parties provided conflicting accounts of their relationship.  Plaintiff testified, through an interpreter, that he worked for defendants from October 2017 through August 2020,[2] but defendants failed to pay him minimum wages and overtime wages and failed to provide him with a wage notice and wage statements.  Defendant Kassim, the owner of 5th Ave. Kings, testified that plaintiff never worked for defendants.  According to Kassim, the payments that he concededly made to plaintiff were intended to help plaintiff and his family, and were not intended as compensation for any employment with defendants.

After careful consideration of the evidence adduced at trial, the demeanor of the witnesses, the arguments of counsel, and the governing law, this Court issues its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[3]

---

[2] The Complaint alleges that his employment commenced one month earlier, in September 2017.  See Compl. ¶¶ 4, 24, 27.

[3] Despite the Court's invitation, the parties did not submit proposed findings of fact and conclusions of law.  See

As set forth below, the Court concludes that plaintiff has met his burden of proof with respect to liability on his minimum wage, overtime and WTPA claims, but not as to the extent of damages that he seeks; instead, the Court awards plaintiff $13,434 in unpaid wages, $13,434 in liquidated damages, $10,000 in statutory penalties, and prejudgment interest.

## TRIAL TESTIMONY

The following is a summary of the relevant trial testimony.

*Plaintiff Leonardo Aponte*

Plaintiff testified that he worked at defendants' grocery store from October 2017 through August 2020.  See Tr. at 22-23.[4]  Plaintiff had previously worked for defendant Kassim at another grocery store in Queens.  See id. at 23.  Although defendant Kassim was the "boss," it was Ayman, defendant Kassim's son, who originally offered plaintiff the job at 5th Ave. Kings.  See id. at 23, 24, 32, 64.  Ayman showed plaintiff around the 5th Ave. Kings store on a Sunday and, the following day, plaintiff saw Kassim, who welcomed him.  See id. at 24, 64.  At 5th Ave. Kings, plaintiff stocked the shelves, moved merchandise from the basement, and cleaned various areas of the store, including the kitchen and its appliances.  See id. at 47-48.  Among other things, Kassim tasked plaintiff with performing a deep cleaning of the kitchen area of the store after the grocery store failed a health department inspection.  See id. at 48.  Plaintiff's trial exhibits include "before and after" photographs of the kitchen floor

---

Transcript of Bench Trial held on April 22, 2022 ("Tr.") at 125.  Plaintiff's counsel did offer to "put in revised calculations" of damages in the event the Court found defendants liable but concluded that plaintiff worked fewer hours than he claimed.  See id. at 8.  The Court has not found it necessary to take plaintiff's counsel up on her offer.

[4] On cross-examination, plaintiff acknowledged that he spent each summer in Puerto Rico during the period when he worked for defendants.  See Tr. at 62.  Upon inquiry from the Court, plaintiff clarified that he stayed in Puerto Rico only from mid-June to the end of July.  See id. at 74-75.

and stove area, taken by plaintiff during his shift, to show Kassim the results of plaintiff's cleaning efforts.  See id. at 47-49, 52-55; Plaintiff's Exhibits ("Pl. Exs.") 6, 7.[5]  In addition, plaintiff submitted a photograph published on the grocery store's Yelp page, which depicted plaintiff sweeping with a broom outside the grocery store.  See Tr. at 17, 56-57; Pl. Ex. 8.

Plaintiff commuted for approximately two hours each way between his home in the Bronx and defendants' grocery store in Bay Ridge, Brooklyn.  See Tr. at 23.  When plaintiff first started his employment at 5th Ave. Kings, he worked 12-hour shifts during the day, but soon was changed to 10-hour shifts at night.  See id. at 64.  Initially, defendants paid plaintiff $10 per hour for all hours worked, then raised his hourly rate to $12 per hour, and eventually reduced his hourly rate to $10 per hour again.  See id. at 57, 64.[6]  Plaintiff testified that he regularly worked six days per week, from 9:00 p.m. to 7:00 a.m.  See id. at 25, 64.  Occasionally, plaintiff started his workday before or after 9:00 p.m. and/or ended his workday before or after 7:00 a.m.  See id. at 26.  During most weeks, plaintiff worked 60 hours per week, but other weeks he worked approximately 40 hours per week.  See id. at 25-26.[7]  For those weeks that plaintiff worked more than 40 hours per week, he was not paid an overtime premium.  See id. at 58.

Plaintiff was paid his wages in cash by the cashier, Mahdi al Salkhadi ("Mahdi"), who obtained permission to do so from defendant Kassim.  See id. at 40, 42, 58-59.  Mahdi and

---

[5] Although the photographs bear a time and date stamp, the photographs were offered without reference to the time and date stamp.  See Tr. at 49-50, 54-55.

[6] The Complaint alleges that plaintiff was paid $650 per week until May 2020, see Compl. ¶ 27, at which point his weekly pay was reduced to $600, an effective rate of $10 per hour, see id. ¶ 28.

[7] Plaintiff initially testified that he typically worked "40 or 60" hours per week.  Tr. at 25-26.  Then, plaintiff clarified that he mostly worked 60 hours and always worked more than 40 hours.  See id. at 26.

Kassim counted the hours plaintiff worked and Mahdi, with Kassim's permission, paid plaintiff from the cash register or from a bag under the counter.  See id. at 58-59.  The amount plaintiff was paid was recorded on a piece of paper with his name written on it.  See id.  Plaintiff was supposed to be paid every six days for each week of work but was paid late.  See id. at 58. For a "couple of months" starting at the end of 2019, the employees used a punch card machine to record their working hours.  See id. at 26-27, 31-33.[8]  Plaintiff produced a photograph of a punch card with his name ("Leo") handwritten at the top, but the card does not indicate the month and year to which it applies.  See Pl. Ex. 1; Tr. at 30-31.  During the period that the machine was in use, plaintiff received a new punch card every week, and defendant Kassim destroyed the punch card after plaintiff was paid for the corresponding week. See Tr. at 32.  When that system was not being utilized, the employees used a notebook to record their hours by hand, which included the employee's name, time in and time out, and sometimes the employee's signature.  See id. at 33-34, 66-67.  Plaintiff produced photographs of two such handwritten records, one of which pertains to the weeks of May 5, 2020 and May 12, 2020 and notes the amount paid to plaintiff for those weeks; the other record concerns the week of August 3, 2020, and includes no notation as to the amount plaintiff was paid.  See Pl. Exs. 4, 5.  Those handwritten records were prepared by plaintiff and Mahdi.  See Tr. at 37-46.

*Non-party Mahdi al Salkhadi*

Non-party Mahdi al Salkhadi was called as a trial witness by plaintiff and testified

---

[8] On cross-examination, plaintiff estimated that the punch cards were in use for less than "eight months."  See Tr. at 66-67.

through an Arabic interpreter.  See id. at 75-76.  Mahdi testified that he worked for defendant

Kassim at 5th Ave. Kings as a cashier, from the end of 2019 until June or July 2021.  See id. at

77-78, 81.  Mahdi worked from 9:00 p.m. to midnight, but stayed at the store until 7:00 a.m

to speak with his family overseas by telephone because of the time difference.  See id. at 80.

Mahdi, a reluctant witness, first testified (credibly) that plaintiff worked for the store during

the night shift, but the witness then sought to disavow his deposition testimony that plaintiff

had helped him with stocking shelves, claiming not to remember.  Compare id. at 81, 82-83

("He's working for the store.  If he did something, he did it for the store, not for me."), with

id. at 83 ("I don't know if he worked or not. . . .  Maybe if he did something. I don't know if

somebody asked him to do something or not. I don't know."); see id. at 85 ("Q. What is it that

you don't remember?  A. If the owner of the store is giving him money or not."); id. at 86

("My deposition was true, but I don't remember what you are talking about.").  Mahdi also

admitted that the grocery store had a punch card machine but denied that it was used to record

workers' hours.  See id. at 86.  According to Mahdi, the handwritten exhibits reflecting

plaintiff's work hours were created only at plaintiff's request to show his wife his schedule.

See id. at 87-89.[9]

### Defendant Adel Kassim

Defendant Kassim, the sole defense witness, testified that he has owned 5th Ave. Kings

since 1997, and operates the store with his son, Ayman.  See id. at 93; see also PTO at 9

(parties stipulated that Kassim "is the owner and Chief Executive Officer of 5th Ave. Kings").

---

[9] After plaintiff rested his case, defendants moved for a directed verdict under Rule 50 of the Federal Rules of
Civil Procedure.  See Tr. at 91.  Because "plaintiff ha[d] sustained his burden of making a prima facie case [and]
[t]here [we]re disputed issues of fact," the Court denied defendants' motion.  See id. at 91-92.

Kassim manages the store, including hiring and firing employees and paying employees their wages.  See Transcript of Videoconference Deposition of Adel Kassim held on August 25, 2021 ("Kassim Dep.") at 28, 38;[10] Tr. at 94; see also PTO at 10 (parties stipulated that "[d]efendants maintained control, oversight, and direction over the . . . operations at 5th Ave. Kings, including oversight of hiring and firing practices; setting hours and pay rates; oversight of the payroll; and other employment practices therein").  Kassim testified that the store did not record the hours worked by its employees or provide them with a written record of how much they were paid, but some of the employees would keep their own notes of their hours.  See Kassim Dep. at 36-37, 125; Tr. at 100, 108, 109, 110.  Kassim explained that there was no need to keep a written record because he knew how many hours employees were scheduled to work and how many hours they actually worked.  See Tr. at 109.  He would call his accountant "every week, or every day, and give him the hours."  Kassim Dep. at 35.  If an employee wanted a written record of their hours, Kassim directed them to his accountant.  See Tr. at 108.  All employees of the store were paid in cash.  See id. at 105; Kassim Dep. at 38.  Kassim denied that any employees worked overtime hours.  See Tr. at 109.

Kassim has known plaintiff since 2007, when plaintiff was a child and frequented another grocery store, 20/20 Grocery, that was owned by a member of Kassim's family.  See id. at 94, 99.  Later, plaintiff worked at 20/20 Grocery at the same time as Kassim.  See id. at 95.

Although plaintiff was never an employee of Kassim or 5th Ave. Kings, see id. at 98, starting in 2019, Kassim sometimes saw plaintiff at night, hanging out at 5th Ave. Kings with

---

[10] Excerpts from Kassim's deposition testimony were identified by plaintiff in Exhibit A to the Pretrial Order, DE #22-1, and were admitted into evidence without objection from defendants.

Kassim's sons and other "guys," <u>see id.</u> at 95-96, 114.  At his deposition, Kassim speculated that plaintiff just showed up at the store "on his own" and that Mahdi or Ayman felt sorry for him and let him in the store.  <u>See</u> Kassim Dep. at 110.  Kassim denied that he asked plaintiff to clean the kitchen or that plaintiff ever worked for him or 5th Ave. Kings.  <u>See</u> Tr. at 97-98. One night, Kassim stopped by 5th Ave. Kings and found plaintiff in the basement with plaintiff's two sons because plaintiff had been evicted from his home; Kassim gave plaintiff whatever cash he had in his pockets.  <u>See id.</u> at 96.  When plaintiff returned to 5th Ave. Kings a few months later, Kassim gave him food.  <u>See id.</u>  Kassim told plaintiff that if he needed food or other items for his house or his children, Kassim would give it to him.  <u>See id.</u> at 97. A few months after that, Kassim gave plaintiff's wife $400.  <u>See id.</u> at 96-97, 111.  Kassim testified that he offered plaintiff a job, but plaintiff declined because he was working in the Bronx and the commute to Brooklyn was too long.  <u>See id.</u> at 97.  Over the course of one year, Kassim gave plaintiff approximately $4,000.  <u>See id.</u> at 110-111; Kassim Dep at 95. During the pandemic, plaintiff asked Kassim if he would sign some documents enabling plaintiff to receive unemployment benefits, but Kassim refused because that was a "fraud." <u>See</u> Tr. at 98.

## DISCUSSION

## I.   General Legal Principles

Rule 52(a) provides, in relevant part, that a court conducting a bench trial "must find the facts specially and state its conclusions of law separately," and that "[j]udgment must be entered under Rule 58."  Fed. R. Civ. P. 52(a)(1).[11]   In making findings of fact following a

---

[11] Rule 52(a) further provides that such "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to

bench trial, the trial court determines "how much weight to afford any given witness's testimony, and whether or not witnesses are credible." Perez v. Rossy's Bakery & Coffee Shop, Inc., CIVIL ACTION NO.: 19 Civ. 8683 (SLC), 2021 WL 1199414, at *2 (S.D.N.Y. Mar. 30, 2021) (quoting Romero v. Rung Charoen Sub, Inc., No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *4 (E.D.N.Y. Sept. 30, 2017)); see Krist v. Kolombos Rest., Inc., 688 F.3d 89, 95 (2d Cir. 2012) (in a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited").

A plaintiff bringing wage-and-hour claims bears the burden of proving the number of hours that he worked. See Tapia v. BLCH 3rd Ave. LLC, 14-cv-8529 (AJN), 2016 WL 4581341, at *5 (S.D.N.Y. Sept. 1, 2016), aff'd, 906 F.3d 58 (2d Cir. 2018); Kim v. Kum Gang, Inc., No. 12 Civ. 6344(MHD), 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015). An employer is, however, required to maintain records of wages and hours and, if he fails to do so, the plaintiff "will not be penalized due to [his] employer's record-keeping default." Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 69 (2d Cir. 1997) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute on other grounds); see Kim, 2015 WL 2222438, at *25. Where the employer has not maintained records of wages and hours, the plaintiff "need only prove that [he] performed work for which [he was] not properly compensated and produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Reich, 121 F.3d at 69 (quoting Anderson, 328 U.S. at 687).

"To meet this burden of proof, the plaintiff may testify as to his own recollection in the

---

judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

absence of records kept by his employer." Perez, 2021 WL 1199414, at *1; see Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection."); see also Reich, 121 F.3d at 66 (requiring "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred") (citation omitted). Once an employee satisfies his burden, the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." Perez, 2021 WL 1199414, at *1 (internal quotation marks and citation omitted); see Anderson, 328 U.S. at 687–88. If the employer fails to produce such evidence, the Court may award damages to the employee, "even though the result is only approximate."[12] Reich, 121 F.3d at 69; accord Perez, 2021 WL 1199414, at *1; Romero, 2017 WL 4480758, at *3.

Several additional legal principles guide the trial court's fact-finding in wage-and-hour cases. "If a plaintiff's testimony is found to be inconsistent with corresponding facts submitted to the court or is otherwise not credible, a court must resolve the inconsistencies in favor of the defendant." Juarez-Cardoso v. La Flor de Santa Ines, Inc., 15 Civ. 6671 (VMS), 2017 WL 4357009, at *8 (S.D.N.Y. Sept. 29, 2017); see Diaz v. AJE Mgmt. Corp., 15 Civ. 1602 (AT) (JCF), 2017 WL 746439, at *3 (S.D.N.Y. Jan. 10, 2017), adopted, 2017 WL 748997 (S.D.N.Y. Feb. 23, 2017); Ortega v. JR Primos 2 Rest. Corp., 15 Civ. 9183 (JCF), 2017 WL

---

[12] This burden-shifting framework applies under both the FLSA and the NYLL. See Perez, 2021 WL 1199414, at *2; Romero, 2017 WL 4480758, at *4; Canelas v. World Pizza, Inc., 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017).

2634172, at *4  (S.D.N.Y. June 16, 2017); Rana v. Bismillah Gyro, Inc., 15 Civ. 5104

(VMS), 2017 WL 1390666, at *2 (E.D.N.Y. Apr. 17, 2017).  "Although a plaintiff's

testimony regarding his recollection alone may be sufficient to establish a rebuttable

presumption that he worked certain hours for which he was not compensated, such testimony

only establishes such a presumption if the testimony is credible." Romero, 2017 WL 4480758,

at *4 (citing Daniels v. 1710 Realty LLC, 497 F.App'x 137 (2d Cir. 2012)); accord Perez,

2021 WL 1199414, at *2; Shiqiu Chen v. H.B. Rest. Grp., Inc., 16 Civ. 2005 (RWL), 2020

WL 115279, at *10 (S.D.N.Y. Jan. 9, 2020).

## II.   Findings of Fact[13]

Having assessed the credibility of the three trial witnesses in this case, the Court finds

that each witness offered testimony that was less than fully credible, but that plaintiff was more

credible than Kassim and Mahdi.  First, plaintiff's detailed testimony lends credibility to

plaintiff's claim that he worked there.  Plaintiff described his daily commute to the store in

Brooklyn from his home in the Bronx; his practice of recording his work hours with Mahdi;

cleaning the store after a failed health department inspection; and was able to identify other

employees at the grocery store and the hours Mahdi was present at the store.  More

importantly, plaintiff's testimony that he worked at the store is corroborated by the initial,

spontaneous comment by Mahdi (i.e., that "plaintiff work[ed] for the store[,] . . . not for

me"), and by the exhibits admitted into evidence, including a photograph of plaintiff holding a

broom outside the grocery store, "before and after" kitchen photographs taken by plaintiff to

show to Kassim, and sample time records.  In contrast, defendants offered no documentary

---

[13] To the extent that any Finding of Fact reflects a legal conclusion, it shall be deemed a Conclusion of Law, and
vice versa.

evidence, and Kassim was evasive on cross-examination regarding when plaintiff was present at defendants' store and Kassim feigned confusion when impeached with his deposition testimony.  Put simply, Kassim's denial that plaintiff ever worked at the grocery store is not worthy of belief.

While the Court credits plaintiff's testimony that he was employed by defendants and concludes that he carried his burden of proof that he is owed minimum wages and overtime compensation, it finds that plaintiff overstated the number of hours he worked each week. Although plaintiff testified that he regularly worked 60 hours per week, the documentary evidence proffered by plaintiff undermines his estimate of the number of hours that he worked. See Haifeng Xie v. Sakura Kai I Inc., 17-CV-7509 (ILG) (JO), 2019 WL 1568756, at *6, *7 (E.D.N.Y. Apr. 11, 2019) (rejecting plaintiff's testimony that, for a portion of plaintiff's tenure, was contradicted by written work schedules); Gallego v. Adyar Ananda Bhavean Corp., 16-CV-4631 (AJN), 2018 WL 4735710, at *6 (S.D.N.Y. Sept. 30, 2018) (crediting defendant's records over plaintiff's "vague recollections of hours worked and pay received"); see also Perez, 2021 WL 1199414, at *4 (plaintiff's absence from payroll records "undercuts" plaintiff's contention that he worked for defendants for ten months); Romero, 2017 WL 4480758, at *5 (after finding the testimony of neither side's witnesses reliable as to how many days per week plaintiff worked, the court extrapolates the number of days from the pay stubs submitted by plaintiff).  The few time cards and notations introduced by plaintiff as authentic and reasonably approximate records of his wages and hours undercut plaintiff's testimony as to the number of hours he worked.   Since the time records are the only documentation of

plaintiff's work schedule introduced at trial,[14] and because inconsistencies in the evidence offered by plaintiff should be resolved in defendants' favor, the Court estimates the number of hours plaintiff worked each week during his entire term of employment—i.e., 48 hours—based on an average of the hours worked during the weeks reflected in the sample time records admitted as exhibits.[15]  See Haifeng Xie, 2019 WL 1568756, at *6 ("for those periods where schedules are unavailable, the Court will presume that Plaintiff worked the same hours and received the same weekly pay"); Romero, 2017 WL 4480758, at *5 (rejecting plaintiff's testimony as to the number of days worked each week, court applies "the distribution of the days worked as reflected in" pay stubs submitted by plaintiff); see also Diaz, 2017 WL 746439, at *3 (resolving inconsistencies in plaintiff's testimony by applying the average of the lowest range of hours worked that plaintiff alleged); Ortega, 2017 WL 2634172, at *4 (applying "the lowest number of hours worked [that plaintiff] alleged").

Similarly lacking in persuasive value is plaintiff's vague testimony that his hourly rate changed from $10 per hour to $12 per hour, and back again, with no indication as to when that change occurred.  The lack of specificity in plaintiff's testimony on this point weighs against its reliability.  See Daniels, 497 F.App'x at 139 (upholding district court's finding that plaintiff's testimony was "too vague to be credible"); Shiqiu Chen, 2020 WL 115279, at *4-6

---

[14] Although plaintiff testified that he took other photographs of his punch cards, he submitted only one into evidence.  See Tr. at 33.  Similarly, while plaintiff recorded his hours by hand for other weeks, he suggested that he took photographs only of the records submitted.  See id. at 46.  When confronted on cross-examination with the fact that none of the time records submitted by plaintiff show that he worked 60 hours in one week, plaintiff acknowledged: "Those that I am showing, yes."  Id. at 66.  On redirect examination, plaintiff testified that the documents he submitted evidencing his hours are the only such documents in his possession.  See id. at 72.

[15] The Court calculates the number of hours worked by averaging 42 hours worked during the week of May 5, 2020, 44 hours worked during the week of May 12, 2020, 49 hours worked during the week of August 3, 2020 and 57 hours worked during an unspecified week.  See Pl. Exs. 1, 4, 5.

(finding neither plaintiff to be credible based on inconsistencies between their deposition and trial testimony, as well as their demeanor at trial); Haifeng Xie, 2019 WL 1568756, at *6 ("[p]laintiff's credibility was significantly impaired by his meandering, contradictory testimony"); Juarez-Cardoso, 2017 WL 4357009, at *16 (plaintiff's "inability to remember any details about her hours and general vagueness weighed against her credibility").  The inconsistencies between the allegations in the Complaint and plaintiff's testimony at trial regarding the amount he was paid likewise undermine plaintiff's credibility on this point.  See Liu v. Little Saigon Cuisine Inc., 18-CV-2181 (RPK) (VMS), 2021 WL 4487839, at *4 (E.D.N.Y. Sept. 30, 2021).  Accordingly, the Court finds that defendants paid plaintiff $12 per hour for all hours worked throughout his employment, as reflected in Plaintiff's Exhibit 5, the only documentary evidence of the amount that plaintiff was paid.  See Haifeng Xie, 2019 WL 1568756, at *6 ("the only reasonable course is to adopt the schedules as an approximation of Plaintiff's actual wages and working hours"); see also Romero, 2017 WL 4480758, at *5 (using "the distribution of the days worked as reflected in these pay stubs as an approximation of the number of days Plaintiff worked each week").

In short, the Court concludes that plaintiff was an employee of 5th Ave. Kings, a grocery store owned, operated and supervised by defendant Kassim.  Plaintiff worked for defendants from October 31, 2017 until August 1, 2020,[16] except for six weeks each summer when plaintiff was in Puerto Rico.  As discussed above, based on the documentary evidence submitted by plaintiff, the Court further finds that he worked approximately 48 hours per week

---

[16] Plaintiff did not specify when in October 2017 he started working for defendants nor when in August 2020 he ended his employment.  Since it is plaintiff's burden to establish his right to damages, the Court uses October 31 and August 1 as the respective start and end dates.  See Diaz, 2017 WL 746439, at *3 n.5.

throughout his employment, and that plaintiff was paid $12 per hour for each hour worked, throughout his employment.  Finally, the Court finds that defendants failed to provide plaintiff with a wage notice and wage statements.[17]

## III.   Conclusions of Law

Plaintiff alleges that defendants failed to pay him statutorily required minimum and overtime wages and failed to provide the required wage notice and statements.  For the reasons that follow, the Court concludes that plaintiff has met his burden of proof in establishing defendants' liability on those claims, but that his demand for damages is overstated.

A.    Jurisdiction and Venue

As an initial matter, the Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367, because they form part of the same case or controversy.  See PTO at 2.  Venue is proper in the Eastern District of New York.  See id. at 9.

Under the FLSA, an employee may bring suit against her employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. §§ 206(a), 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).  Plaintiff brings his FLSA claims pursuant to theories of both "enterprise coverage" and "individual coverage."  See Compl. ¶¶ 12-15.  The parties have stipulated that defendants are employers of multiple employees engaged in interstate commerce, that defendants were an enterprise covered by the FLSA and that 5th Ave. Kings had an annual

---

[17] Defendants stipulated on the record that defendants did not provide plaintiff with wage statements or a wage notice.  See 12/16/21 Minute Entry.

gross volume of sales of over $500,000 for each of the relevant years.  See PTO at 10.  Thus, since plaintiff has satisfied "enterprise coverage," defendants are subject to the FLSA.[18]

### B.    Employer Status

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); see id. § 203(g) (defining "employ" as "to suffer or permit to work").[19]   An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.  See Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).[20]

The Second Circuit has identified four factors that a court should address in applying, on a case-by-case basis, an "economic-realities" test when determining employer status: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotations and citations omitted).[21]  In accordance with these principles, "a corporate officer with operational control of a

---

[18] In any event, plaintiffs' damages are all recoverable under the NYLL, which contains no such requirements.

[19] The NYLL's definitions with respect to "employer status" are nearly identical to the FLSA's and have been interpreted coextensively.  See Jianjun Chen v. 2425 Broadway Chao Rest., LLC, 1:16-cv-5735-GHW, 2017 WL 2600051, at *3 (S.D.N.Y. June 15, 2017) (collecting cases).

[20] Like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."  See Vargas v. Jet Peru-Courier Corp., No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018), adopted, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018).

[21] Courts apply the same "economic realities test" under the NYLL.  See Ji v. Jling Inc., 15-CV-4194 (SIL), 2022 WL 1080989, at *6 (E.D.N.Y. Apr. 11, 2022) (collecting cases).

corporation's covered enterprise is an employer along with the corporation . . . ." Moon v.

Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (quotation marks and citation

omitted); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

The parties stipulate that defendant Kassim is an employer under the FLSA and the

NYLL.  See PTO at 10.  The parties further stipulate that defendants "maintained control,

oversight, and direction over the operation of . . . 5th Ave. Kings, including oversight of hiring

and firing practices; setting hours and pay rates; [and] oversight of the payroll."  Id.  Thus, the

Court finds that defendants Adel Kassim and 5th Ave. Kings were plaintiffs' joint employers

under the FLSA and NYLL.  Accordingly, defendants are jointly and severally liable for any

judgment resulting from plaintiff's claims in this action.  See Perez, 2021 WL 1199414, at *7;

Romero, 2017 WL 4480758, at *9.

        C.       Unpaid Minimum and Overtime Wages

Under the FLSA, an employee must be paid a minimum hourly rate and must "be

compensated at a rate of no less than one and one-half times the regular rate of pay for any

hours worked in excess of forty per week."  Nakahata v. New York-Presbyterian Healthcare

Sys., Inc., 723 F.3d 192, 200, 201 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)).[22]  The NYLL

is quite similar to the FLSA in that it requires employers to pay a minimum hourly wage to

employees (albeit at a higher rate), as well as overtime compensation.  See N.Y. Lab. Law

§ 650 et seq.; Juarez-Cardoso, 2017 WL 4357009, at *13; Gunawan v. Sake Sushi Rest., 897

F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all

respects.").  In order to establish liability for unpaid minimum wages or overtime pay, "a

---

[22] As noted earlier, plaintiff withdrew his minimum wage claim under the FLSA.  See supra pp. 1-2.

plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel, 643 F.3d at 361 (citing Anderson, 328 U.S. at 686-87; Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)); accord Chichinadze v. BG Bar Inc., 517 F.Supp.3d 240, 253 (S.D.N.Y. 2021) (applying same principles to unpaid wages under FLSA and NYLL). Employers that fail to pay the required wages "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); see N.Y. Lab. Law § 663(1) (likewise providing for liquidated damages equal to the unpaid wages).

As discussed above, the Court finds that plaintiff met his burden to establish by a preponderance of the evidence that he worked more than 40 hours per week at defendants' grocery store and, in 2019 and 2020, received less than the NYLL minimum wage and no overtime premium.

### 1. *Minimum Wage*

The NYLL requires that employees be paid a minimum hourly rate. See N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1. To calculate deficiencies in a plaintiff's minimum wage or overtime wage compensation, the Court must first determine the plaintiff's regular hourly wage rate. See Caltenco v. G.H. Food Inc., 824 F.App'x 88, 89 (2d Cir. 2020). Under both the FLSA and the NYLL, where, as here, an employee "is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'" 29 C.F.R. § 778.110(a); see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16 (the employee's regular

rate is "the amount that the employee is regularly paid for each hour of work."); Caltenco, 824 F.App'x at 89.  Once the Court determines the "regular rate," it "is then compared to the statutorily-imposed minimum wage to determine whether the employee has been underpaid." Java v. Aguila Bar Rest. Corp., 16-CV-6691 (JLC), 2018 WL 1953186, at *10 (S.D.N.Y. April 25, 2018).

Although plaintiff sought to use the higher NYLL minimum wage rates applicable to large employers, see PTO at 7-8, no evidence was adduced at trial that 5th Ave. Kings had more than 10 employees.  Because it is plaintiff's burden to establish his damages, the Court applies the rates applicable to small employers in New York City.  See Thompson v. Hyun Suk Park, 18-CV-0006 (AMD) (ST), 2020 WL 5822455, at *7 n.7 (E.D.N.Y. Sept. 1, 2020), adopted, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020).   The applicable NYLL minimum wage rate for New York City employers with 10 or fewer employees was $10.50 per hour in 2017, $12.00 per hour in 2018, $13.50 per hour in 2019, and $15.00 per hour in 2020.  See N.Y. Lab. Law § 652(1)(a)(ii); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(ii).[23]

Since the Court finds that plaintiff was paid an hourly rate of $12 throughout his employment with defendants, see supra p. 14, plaintiff has carried his burden of demonstrating that he is entitled to minimum wage damages for all hours worked in 2019 (when the NYLL minimum wage was $13.50 per hour and the hourly shortfall was thus $1.50) and in 2020 (when the NYLL minimum wage was $15.00 per hour and the hourly shortfall was thus $3.00); plaintiff is not entitled to an award of minimum wage damages for 2017 and 2018, when he received an hourly rate ($12) in excess of the then-applicable hourly minimum wage

---

[23] The federal minimum wage rate throughout this period was $7.25.  See 29 U.S.C. § 206(a)(1)(C).

($10.50 and $12.00, respectively).

Accordingly, as plaintiff worked about 48 hours each week, see supra p. 13, he is entitled to unpaid minimum wages in the amount of $72 ($1.50 x 48 hours) per week for work in 2019 and $144 ($3.00 x 48 hours) per week for work in 2020.  Based on the Court's finding that plaintiff worked 46 of the 52 weeks in 2019 (having spent 6 weeks in Puerto Rico), he is entitled to minimum wage damages for 2019 in the amount of $3,312.00 ($72 per week x 46 weeks).  For 2020, based on the Court's finding that plaintiff worked 24.5 weeks (spanning 30.5 weeks,[24] less 6 weeks plaintiff spent in Puerto Rico), he is entitled to minimum wages in the amount of $3,528.00.  In total, plaintiff is owed minimum wages of $6,840.00.

### 2.    *Overtime Wages*

Both the FLSA and NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; Caltenco, 824 F.App'x at 89.  To establish an overtime claim, plaintiff must demonstrate that he worked compensable time in a workweek longer than 40 hours and that he was not properly compensated for the overtime hours.  See Nakahata, 723 F.3d at 200.  "[I]f an employee's regular rate is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the regular rate." Feng Chen v. Patel, 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *9 (S.D.N.Y. July 2, 2019) (quoting Peralta v. M & O Iron Works, Inc., No. 12 Civ. 3179 (ARR) (RLM), 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014)).

---

[24] The period January 1, 2020 to August 1, 2020 consists of 30 weeks and 3 days.  The Court rounds the relevant time periods to the nearest half-week or whole-week, as appropriate.  See Lee v. Woodstock Outdoor Co., Inc., 17-CV-7696 (JPO) (KNF), 2020 WL 5606157, at *8, *9 (S.D.N.Y. Sept. 2, 2020), adopted, 2020 WL 5603693 (S.D.N.Y. Sept. 18, 2020).

As discussed above, plaintiff established that he regularly worked at 5th Ave. Kings in excess of 40 hours per week, but was not paid the requisite premium for those overtime hours. Thus, plaintiff is entitled to recover unpaid overtime premium wages under the NYLL in the amount of a 50-percent premium over his regular hourly rate, as determined in the manner previously discussed herein. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate[.]").[25]

Plaintiff is entitled to recover unpaid overtime wages for the eight overtime hours that the Court has found he worked each week. Accordingly, plaintiff is awarded damages for unpaid overtime wages, as follows:

| Time Period | OT Hours per Week | Reg. or Min. Wage Rate | OT Owed per Hour | OT Owed per Week | Weeks[26] | Total |
|---|---|---|---|---|---|---|
| 10/31/17-12/31/18 | 8 | $12.00 | $6.00 | $48.00 | 55.0 | $2,640.00 |
| 1/1/19-12/31/19 | 8 | $13.50 | $6.75 | $54.00 | 46.0 | $2,484.00 |
| 1/1/2020-8/1/2020 | 8 | $15.00 | $7.50 | $60.00 | 24.5 | $1,470.00 |
| TOTAL | | | | | | $6,594.00 |

---

[25] Alternatively, plaintiff could recover his unpaid overtime premium wages under the FLSA. See 29 U.S.C. § 207(a)(1) (mandating that an employee who works in excess of 40 hours per week must be paid for the excess hours at a premium overtime rate); 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid, in addition to the straight-time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."). By federal regulation, for purposes of calculating plaintiff's unpaid overtime premium, his "regular rate of pay" is adjusted upward to coincide with the applicable minimum wage rate under the NYLL. See 29 C.F.R. § 778.5.

[26] As noted earlier, the Court deducts six weeks of each summer, which plaintiff spent in Puerto Rico. Since the time period between October 31, 2017 and December 31, 2018 equals 54 weeks and 6 days, the Court rounds to the nearest full week. See Villar v. Prana Hosp., Inc., 14 Civ. 8211 (RA)(JCF), 2017 WL 1333582, at *9 nn.13-15 (S.D.N.Y. Apr. 11, 2017), adopted, 2018 WL 3579841 (S.D.N.Y. July 25, 2018).

D.     Liquidated Damages

Plaintiff requests liquidated damages under the FLSA and/or NYLL.  See PTO at 7, 8.
Under the FLSA, an employer who violates the minimum wage or overtime compensation
requirements is liable for "an additional equal amount as liquidated damages" unless the
employer demonstrates to the Court that it acted in good faith and had reasonable grounds for
believing that its actions were lawful.  29 U.S.C. §§ 216(b), 260.  The NYLL similarly
authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves
a good faith basis to believe that its underpayment of wages was in compliance with the law
. . . ."  N.Y. Lab. Law § 663(1).  Liquidated damages under the NYLL are likewise
calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.  See id.
Nevertheless, because "there are no meaningful differences" between the FLSA and the NYLL
liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not
allowing duplicative liquidated damages for the same course of conduct."  Rana v. Islam, 887
F.3d 118, 123 (2d Cir. 2018).

The Court finds that defendants have failed to meet their burden of presenting evidence
of their good faith.  See Peralta, 2014 WL 988835, at *10.  Since the NYLL provides for a
higher minimum wage, the Court awards liquidated damages under the NYLL.  See Fan v.
Jenny & Richard's Inc., 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22,
2019), adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  Accordingly, applying 100
percent liquidated damages as required by the NYLL, the Court awards plaintiff liquidated
damages for unpaid wages under the NYLL in the amount of $13,434.00 ($6,840.00 +
$6,594.00).

22

E.     Statutory Damages under the WTPA

Unlike the FLSA, the NYLL's WTPA requires that employers provide employees, at

the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other;

allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . . ; the

name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."  N.Y. Lab.

Law § 195(1)(a).  Moreover, section 195(3) of the NYLL obligates an employer to "furnish

each employee with a statement with every payment of wages, listing . . . the dates of work

covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;

allowances, if any, claimed as part of the minimum wage; . . . and net wages."  N.Y. Lab.

Law § 195(3).

Defendants conceded that they did not provide plaintiff with a wage notice and wage

statements.  See 12/16/21 Minute Entry.  Under the WTPA, plaintiff is entitled to "$50 per

workday after February 27, 2015, up to $5,000 for failure to provide a wage notice."  Gil v.

Frantzis, 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *10 (E.D.N.Y. Aug. 17, 2018),

adopted as modified on other grounds, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018); see

N.Y. Lab. Law § 198(1-b).  An employee would therefore hit the statutory maximum of

$5,000 if he or she worked 100 days without the employer's satisfying New York's wage

notice requirements.  Plaintiff is also entitled to "$250 per workday for each workday after

February 27, 2015, up to $5,000 for failure to provide a wage statement."  Gil, 2018 WL

4522094, at *10; see N.Y. Lab. Law § 198(1-d).  An employee would therefore hit the

statutory maximum of $5,000 if he or she worked twenty days on which "the [wage statement] violations occurred or continue[d] to occur[.]"  N.Y. Lab. Law § 198(1-d).  As plaintiff worked for defendants in excess of 100 days and 20 pay periods without receiving a wage statement,[27] he is entitled to the statutory maximum of $5,000 for violations of section 195(1)(a) and $5,000 for violations of section 195(3), for a total of $10,000 in statutory penalties.

F.    Prejudgment Interest

Plaintiff requests prejudgment interest pursuant to New York law.  See PTO at 7, 8. "Although it is 'well settled that prejudgment interest is not awardable under FLSA where liquidated damages are awarded, NYLL permits the award of both liquidated damages and prejudgment interest."  Lopez v. Royal Thai Plus, LLC, 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *12 (E.D.N.Y. Feb. 6, 2018) (citations and quotations omitted), adopted, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  Prejudgment interest is available for unpaid minimum and overtime wages under the NYLL, but not for amounts awarded under the WTPA, see Martinez v. Alimentos Saludables Corp., 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or on liquidated damages, see Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 49 (E.D.N.Y 2015).

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both FLSA and NYLL."  Thomas v. Good Vision Taste

---

[27] Defendants failed to provide plaintiff with wage statements over a period of time that exceeds the statutory penalty limit regardless of whether the statutory reference to "each work day that the violation occurs" is construed to include only work days on which wages are actually paid or all work days in a pay period.  See Zhang v. Hiro Sushi at Ollies, Inc., 17 Civ. 7066 (JPC), 2022 WL 2668263, at *14 (S.D.N.Y. July 11, 2022) (awarding maximum statutory damages for failure to provide wage statement to plaintiffs who worked for 78 and 79 days, respectively); Haifeng Xie, 2019 WL 1568756, at *9 n.8 (construing statute as counting only work days on which wages are actually paid).

Inc., No. 17-CV-6084 (FB)(LB), 2018 WL 4268909, at *7 (E.D.N.Y. Apr. 17, 2018)

(quotations omitted), adopted as modified on other grounds, 2019 WL 4265868 (E.D.N.Y.

Sept. 5, 2018).  Courts that have awarded prejudgment interest in such cases have reasoned

that plaintiffs "should be permitted to recover under the statute that provides the greatest relief,

which in this case is the NYLL."  Santana v. Latino Express Rests., Inc., 198 F.Supp.3d 285,

294 (S.D.N.Y. 2016) (citations and quotations omitted); accord Fan, 2019 WL 1549033, at

*12; see generally Keawsri v. Ramen-Ya Inc., 17-cv-2406 (LJL), 2022 WL 3152572, at *3

(S.D.N.Y. Aug. 8, 2022); Saltos v. GGI Constr. Corp., 21-CV-6459 (FB) (SIL), 2022 WL

3108622, at *6, *7 (E.D.N.Y. July 18, 2022), adopted, 2022 WL 3100559 (E.D.N.Y. Aug.

4, 2022); Neri v. Abi Japanese Rest., Inc., 20-CV-581 (MKB), 2021 WL 6804252, at *12

n.21 (E.D.N.Y. Nov. 29, 2021), appeal filed.  Other courts, including this Court on occasion,

have concluded that prejudgment interest should be awarded only on damages arising out of

"non-overlapping NYLL claims" – that is, minimum wage, overtime and spread-of-hours

claims for which there is no corresponding FLSA violation.  See, e.g., De la Cruz Casarrubias

v. Surf Ave Wine & Liquor Inc., 20-CV-3003 (AMD), 2021 WL 2227977, at *9 (E.D.N.Y.

May 11, 2021), adopted, 2021 WL 2223275 (E.D.N.Y. June 2, 2021); McFarlane v. Harry's

Nurses Registry, 17-CV-6350 (PKC) (PK), 2020 WL 7186791, at *4 (E.D.N.Y. Dec. 7,

2020) (collecting cases); Sun v. China 1221, Inc., No. 12-CV-7135 (RJS), 2016 WL 1587242,

at *5-6 (S.D.N.Y. Apr. 19, 2016).

     Here, because plaintiff's hourly rate at all times exceeded the FLSA minimum wage,

and he thus withdrew his minimum wage claim under the FLSA, the Court has assessed

liquidated damages only under the NYLL.  In these circumstances, and given the unsettled

state of the law, as well as defendants' failure to oppose plaintiff's request for both liquidated

damages and prejudgment interest, the Court awards plaintiff prejudgment interest under New

York law.

"Under New York law, prejudgment interest is calculated at a rate of 9% per annum."

Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17

(E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001).  The date from which to compute

prejudgment interest is left to the discretion of the court.  See Conway v. Icahn & Co., 16

F.3d 504, 512 (2d Cir. 1994); RKI Constr., LLC v. WDF Inc., No. 14-cv-803 (KAM)(VMS),

2020 WL 6545915, at *22 (E.D.N.Y. Nov. 6, 2020).  Where "damages were incurred at

various times, interest shall be computed upon each item from the date it was incurred or upon

all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).

"The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate

date for purposes of calculating prejudgment interest."  Asfaw v. BBQ Chicken Don Alex No.

1 Corp., 14 CV 5665 (CBA)(RML), 2015 WL 13731362, at *17 (E.D.N.Y. Aug. 26, 2015).

The Court, in exercising its discretion, adopts, as the proposed interest accrual date, the

midpoint of plaintiff's employment period.  Such interest is calculated from March 17, 2019 on

a principal of $13,434.00.  Thus, this Court awards prejudgment interest, at the statutory rate,

on plaintiff's unpaid wages running from March 17, 2019 until the date judgment is entered, in

the amount of $3.31 per day.

G.    Attorney's Fees and Costs

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of

reasonable attorney's fees.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Plaintiff seeks

leave to file a motion for attorney's fees and costs. <u>See</u> PTO at 9. Accordingly, plaintiff is granted leave to submit an application for an award of attorney's fees and costs pursuant to Rule 54 of the Federal Rules of Civil Procedure. However, in lieu of requiring plaintiff to file such application within 14 days of entry of judgment under Rule 54, the Court directs counsel to confer in good faith in an effort to stipulate to a reasonable amount of fees and costs. By September 16, 2022, plaintiff shall either file such a stipulation or, if the parties are unable to resolve this issue, file plaintiff's motion for fees and costs; defendants' response to such motion is due by October 7, 2022.

## CONCLUSION

For the reasons set forth above, the Clerk of Court is respectfully directed to enter judgment in favor of plaintiff against defendants 5th Ave. Kings Fruit & Vegetables Corp. and Adel Kassim, jointly and severally, in the amount of $13,434 in unpaid wages, $13,434 in liquidated damages, $10,000 in statutory penalties, and prejudgment interest in the amount of $3.31 per day from March 17, 2019 until the entry of judgment. Plaintiff is granted leave to submit, by September 16, 2022, either an application for an award of attorney's fees and costs or a stipulation among the parties resolving that issue.

**SO ORDERED.**

**Dated:**      **Brooklyn, New York**
               **August 25, 2022**

/s/   **Roanne L. Mann**
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**