**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
**LEONARDO APONTE,**

<table>
<tr><td><strong>Plaintiff,</strong></td><td><strong>MEMORANDUM<br>AND ORDER</strong></td></tr>
<tr><td>-against-</td><td><strong>20-CV-5625 (RLM)</strong></td></tr>
</table>

**5TH AVE. KINGS FRUIT & VEGETABLES CORP.,**
*doing business as* **5TH AVE. KINGS SUPERMARKET,**
*et al.*,

                                    **Defendants.**
-------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In this wage-and-hour action, which is pending before this Court with the consent of the parties, see Consent (Nov. 17, 2021), Electronic Case Filing ("ECF") Docket Entry ("DE") #19, plaintiff Leonardo Aponte ("plaintiff" or "Aponte") sued his former employer, 5th Ave. Kings Fruit & Vegetables Corp. ("5th Ave. Kings"), doing business as 5th Ave. Kings Supermarket, and its owner Adel Kassim ("Kassim") (collectively, "defendants"), to recover certain wage deficiencies and related damages, see generally Complaint (Nov. 18, 2020) ("Compl."), DE #1.  Currently pending before the Court is plaintiff's post-trial motion for attorneys' fees and costs, as well as his supporting memorandum of law.  See generally [Plaintiff's] Motion for Attorney Fees (Sept. 16, 2022) ("Pl. Mot."), DE #35; Memorandum in Support [of] Application for Attorney's Fees and Costs (Sept. 16, 2022) ("Pl. Mem."), DE #35-1.  For the forthcoming reasons, the Court grants plaintiff's motion to the extent described herein.

## PROCEDURAL BACKGROUND

The Court assumes familiarity with this matter, and incorporates by reference the relevant factual and procedural background of the case, as set forth in its Findings of Fact and Conclusions of Law dated August 25, 2022 ("Findings & Conclusions").  See generally Findings of Fact and Conclusions of Law (Aug. 25, 2022) ("Findings & Conclusions"), DE #33.  Accordingly, the Court provides only the following abbreviated procedural history:

On November 18, 2020, plaintiff filed a complaint against defendants,[1] alleging several violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, as amended by the Wage Theft Prevention Act, N.Y. Lab. Law § 195.  See generally Compl.[2]  On November 17, 2021, on consent of the parties, the case was assigned to this magistrate judge for all purposes.  See Consent, DE #19.  The parties also waived a jury and consented to a bench trial.  See Letter *Accepting Magistrate to preside over case and trial and agreement as to bench trial* (Nov. 17, 2021) at 1, DE #18.

A one-day bench trial took place on April 22, 2022, during which the Court heard the testimony of plaintiff, defendant Kassim, and non-party witness Mahdi Al Sakhadi ("Al Sakhadi").  See Minute Entry (Apr. 22, 2022) ("4/22/22 Minute Entry"), DE #29.  At the conclusion of the trial, the Court made "credibility findings on the record but reserve[d its] decision on formal Findings of Fact and Conclusions of Law."  Id.

---

[1] Initially, plaintiff also brought claims against another entity defendant—20/20 Grocery and Deli Corp.—but these claims were later dismissed on consent.  See Minute Entry (Dec. 16, 2021) ("12/16/21 Minute Entry"), DE #23.

[2] Plaintiff later withdrew his minimum wage claims under the FLSA, as well as his allegation that he had not been paid for his final three weeks of work at 5th Ave. Kings.  See Proposed Pretrial Order (Dec. 11, 2021) at 7, DE #22; 12/16/21 Minute Entry, DE #23.

Thereafter, on August 25, 2022, the Court issued its Findings & Conclusions.  See generally Findings & Conclusions, DE #33.  The Court found, inter alia, that plaintiff was an employee of 5th Ave. Kings (which is owned, operated, and supervised by Kassim) and worked for defendants from October 31, 2017 until August 1, 2020 (except for six weeks each summer), for approximately 48 hours per week.  See id. at 14-15, 20.  In addition, the Court concluded that plaintiff had established, by a preponderance of the evidence, that defendants failed to pay him the statutorily required minimum and overtime wages, or to provide the required wage notice and statements.  See id. at 15.  Based on its factual findings, the Court determined plaintiff's damages and awarded him $13,434 in unpaid wages, $13,434 in liquidated damages, $10,000 in statutory penalties, and prejudgment interest in the amount of $3.31 per day, from March 17, 2019 until the entry of judgment.[3]  See id. at 27.  The Court also granted plaintiff leave to move for attorneys' fees and costs, but set an extended briefing schedule so that the parties could engage in settlement discussions on this discrete issue.  See id. at 26-27.  Unfortunately, the parties were unable to resolve plaintiff's request for attorneys' fees and costs.

On September 16, 2022, plaintiff filed the instant motion, in which he originally sought an award of $98,792.50 in attorneys' fees and $9,306.60 in costs and expenses.  See Pl. Mem. at 9, DE #35-1.  On October 6, 2022, defendants filed their opposition to plaintiff's motion,[4]

---

[3] Judgment was entered in the above amounts against both defendants, jointly and severally, on August 26, 2022. See Clerk's Judgment (Aug. 26, 2022) at 1, DE #34.

[4] Prior to filing their opposition, defendants filed a notice of appeal with respect to the Court's Findings & Conclusions.  See generally [Defendants'] Notice of Appeal (Sept. 19, 2022), DE #36.  This Court has not been divested of jurisdiction to address the issue of fees and costs.  See, e.g., Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004) ("[N]otwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees." (collecting cases))

asserting that (1) plaintiff's counsel's requested hourly rates are excessive and should be decreased; and (2) the number of hours for which this Court awards attorneys' fees should be reduced by 40 percent, in order "to adjust for the vague, duplicative, excessive, and unreasonable nature of the requested hours." [Defendants'] Memorandum in Opposition to Plaintiff's [F]ee Application (Oct. 6, 2022) ("Def. Opp.") at 3-7, DE #37. Defendants also oppose plaintiff's request for cost reimbursement related to language interpreter services. See id. at 7.

On October 17, 2022, plaintiff filed his reply, in which he challenges defendants' arguments as vague and unsupported by specific examples or caselaw, and, with respect to the interpreter services, as factually inaccurate. See generally [Plaintiff's] Reply in Support [of] Motion for Attorney Fees (Oct. 17, 2022) ("Pl. Reply"), DE #38. Plaintiff demands an additional $13,520 in attorneys' fees as compensation for the time that his counsel spent preparing said reply and for "other post-trial work," thereby increasing plaintiff's total fee request to $112,312.50. Id. at 1.

## DISCUSSION

### I.   Attorneys' Fees

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorneys' fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); see also Singh v. A & A Mkt. Plaza, Inc., CV 15-7396 (AKT), 2019 WL 4861882, at *6 (E.D.N.Y. Sept. 30, 2019). In considering an application for attorneys' fees, the Court must first determine the presumptively reasonable fee. See Safeco Ins. Co. of Am. v. M.E.S., Inc., 790 F.App'x 289, 292 (2d Cir. 2019); Arbor Hill Concerned Citizens Neighborhood Ass'n v.

Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  This presumptively reasonable fee—

or "lodestar"[5]—is essentially "what a reasonable, paying client would be willing to pay, given

that such a party wishes to spend the minimum necessary to litigate the case effectively."

Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation

marks and citation omitted); see Safeco Ins. Co. of Am., 790 F.App'x at 292.  The party

seeking a fee award bears the burden of establishing the reasonableness of the rates charged

and the necessity for the hours spent.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983);

Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999); Fermin v. Las Delicias Peruanas

Rest., Inc., 93 F.Supp.3d 19, 51 (E.D.N.Y. 2015).

 Courts can and should exercise broad discretion in determining a reasonable fee award.

See Hensley, 461 U.S. at 437 ("The court necessarily has discretion in making this equitable

judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion").

The method for determining reasonable attorneys' fees in this Circuit is based on a number of

factors, such as the labor and skill required; the difficulty of the issues; the attorney's

customary hourly rate; the experience, reputation, and ability of the attorney; and awards in

similar cases.  See Arbor Hill, 522 F.3d at 184, 186 n.3, 190.  In particular, when assessing

an attorney's requested hourly rate, courts typically consider other rates awarded in the district

in which the reviewing court sits.  See Simmons, 575 F.3d at 174-75.  This is known as the

"forum rule."  See id. (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at

191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel

---

[5] The "lodestar" is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.  See Arbor Hill, 522 F.3d at 183 ("The fee—historically known as the 'lodestar'—to which [ ] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190.  "[A] fee award should be based on scrutiny of the unique circumstances of each case[.]"  McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citations and quotations omitted).

Here, plaintiff has prevailed on his claims under the FLSA and NYLL.  See generally Findings & Conclusions, DE #33.  Plaintiff now seeks $112,312.50 in attorneys' fees for time expended by his counsel of record, Trief & Olk ("T&O").  See Pl. Mem. at 9, DE #35-1 (requesting $98,792.50 in fees for work and travel time); Pl. Reply at 10-11, DE #38 (requesting an additional $13,520 in fees).  In support of this demand, plaintiff has proffered, *inter alia*, the Declaration of Shelly L. Friedland (the "Friedland Declaration"); biographies of the T&O timekeepers; and contemporaneous time records.  See generally Pl. Mem., DE #35-1; Declaration [of] Shelly L. Friedland (Sept. 16, 2022) ("Friedland Decl."), DE #35-2; Pl. Mem., Exhibit A (Time Listings) (docketed on Sept. 16, 2022) ("Time Records"), DE #35-3; Pl. Reply, Exhibit C - Additional Time Records (docketed on Oct. 17, 2022) ("Supp. Time Records"), DE #38-4.

## A.    **Reasonable Hourly Rate**

In relation to this case, plaintiff demands the following hourly rates: $500 for work performed by Ted Trief (senior partner), $400 for Shelly L. Friedland (partner), $375 for Jason M. Kaufer (of counsel/senior counsel), $150 for Monica Palacios (legal assistant/

interpreter), and $100 for Grace Mortimer (legal assistant), all of whom are employed by

T&O.  See Pl. Mem. at 3-7, DE #35-1.  Plaintiff has provided varying levels of detail for each

of these timekeeper's educational and professional backgrounds.  See id.; Friedland Decl. ¶¶

24-35, DE #35-2.  "Courts in this District have held reasonable hourly rates in [wage-and-

hour] cases to be approximately $300-450 for partners, $200-$325 for senior associates, $100-

$200 for junior associates, and $60-$80 for legal support staff."  Montanes v. Avanti Pizza 2

Inc., 21-CV-586 (ERK), 2022 U.S. Dist. LEXIS 192014, at *19 (E.D.N.Y. Oct. 20, 2022)

(collecting cases), adopted, 2022 U.S. Dist. LEXIS 211094 (E.D.N.Y. Nov. 8, 2022); see

Caltenco v. G.H. Food Inc., 16 Civ. 1705 (VMS), 2021 WL 4481205, at *6 (E.D.N.Y. Sept.

30, 2021) ("Courts in the Eastern District have recently awarded hourly rates ranging from

$300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior

associates, and $70 to $100 for legal support staff in FLSA cases." (quotation marks and

citation omitted)), reconsideration denied, 2022 WL 4539673 (E.D.N.Y. Sept. 28, 2022).

### i. Partners

Plaintiff requests that Ms. Friedland be awarded $400 per hour for all work that she

performed in this case.  See Pl. Mem. at 5, DE #35-1.  Ms. Friedland is the lead attorney in

this case and performed the majority of the work for which plaintiff requests attorneys' fees.

See id. at 3-4.  With respect to her educational background, Ms. Friedland received an

undergraduate degree in economics from Columbia University and graduated cum laude from

Harvard Law School in 1997.[6]  See Friedland Decl. ¶ 24, DE #35-2.  She is admitted to the

---

[6] While Ms. Friedland does not specify when she was admitted to the bar, see generally Friedland Decl., DE #35-2, the Court makes the reasonable inference that she has approximately 24 years' experience, based on her graduation date from law school.

New York and New Jersey state bars and is a member of several bar associations.  See id.

Professionally, Ms. Friedland has been recognized by New York Super Lawyers for both her

class action and employment practices.  See id.  Ms. Friedland further avers that she has

"represented employees in approximately 15 FLSA and/or NYLL cases[,]" and has provided

the names and case numbers of both the class actions and individual representations on which

she has worked.  Id. ¶¶ 25-28.

Ms. Friedland's requested hourly rate of $400 (which is lower than her reported actual

rate of $600 per hour) would normally be within the range of hourly rates typically awarded to

partners in this District, albeit at the higher end.[7]  Nevertheless, many of Ms. Friedland's time

entries reflect that she performed work that could have been completed by an associate or

paralegal.  See, e.g., Time Records at 2, DE #35-3 (11/18/20 time entry for filing the

complaint); id. at 4 (5/18/21 time entry: "Prepared discovery (serve discovery)"); id. at 9

(11/29/21 time entry for discussing preparation of trial exhibits with paralegal); id. at 14

(8/25/22 time entry for conducting legal research on attorneys' fees); id. (8/25/22 time entry

with the description "Reviewed spreadsheets with fee/expense information; calculations of

possible adjustments"); id. at 10 (12/20/21 time entry for drafting letter to the Court regarding

---

[7] Defendants have put forth several arguments why Ms. Friedland should not be awarded $400 per hour.
Primarily, defendants argue that "given [Ms. Friedland's] years of experience practicing employment law and
years of total experience, this [$400] requested rate is excessive and unreasonable."  Def. Opp. at 4, DE #37.
Defendants cite no precedent to support this argument, which is belied by caselaw reflecting that a $400 hourly
rate is within the range of rates appropriate for a partner, such as Ms. Friedland, with approximately 24 years'
experience.  See, e.g., Martinez v. New 168 Supermarket LLC, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579,
at *8 (E.D.N.Y. Aug. 19, 2020) (recommending $400 hourly rate for attorney with approximately 23 years'
experience in FLSA litigation), adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020).  As discussed infra, the
Court is decreasing Ms. Friedland's hourly rate on account of her performance of associate-level work that was
billed at a partner-level rate; nevertheless, the Court rejects out of hand defendants' argument that Ms.
Friedland—a partner with significant experience and impressive credentials—should be awarded an hourly rate as
low as "$150 for associate work . . . and $90 for paralegal work."  Def. Opp. at 4, DE #37.

potential trial dates); Supp. Time Records at 3, DE #38-4 (preparing spreadsheet for attorney

time records); id. (conducting routine research on hourly rates awarded in this district).  While

T&O may not have "junior associates who can handle tasks that might be appropriately

handled by an attorney with less experience[,]" Friedland Decl. ¶ 45, DE #35-2, this does not

justify Ms. Friedland's having billed her client for such tasks at a partner-level rate.  Ms.

Friedland's requested rate of $400 is therefore excessive under the circumstances of this case.

"District courts have the legal authority and discretion to . . . reduce an attorney's

hourly rate for time spent on routine clerical tasks[.]"  Gesualdi v. Zano Indus., Inc., 21-CV-

6097 (KAM)(RER), 2022 WL 4238267, at *8 (E.D.N.Y. Sept. 14, 2022) (citation omitted).

"Deductions are [likewise] warranted for attorney time spent on . . . work that should have

been performed by lower-billing attorneys."  Id. (citation omitted).  Given the number of Ms.

Friedland's entries denoting associate- and paralegal-level work, the Court decreases her

hourly rate from $400 to a blended rate of $350 for all hours, in lieu of performing a laborious

line-by-line analysis with varying reductions.  See, e.g., Toribio v. Abreu, 18-CV-1827

(ARR), 2018 WL 6363925, at *9-10 (E.D.N.Y. Nov. 15, 2018) (in a FLSA/NYLL case, court

recommended a reduced blended hourly rate of $350 for two partners due, in part, to their

completion of work that "could have been performed by an associate or paralegal at a much

lower billing rate"), adopted, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018); see also Ingevity

Corp. v. Regent Tek Indus., Inc., 22-CV-565 (NGG) (RLM), 2022 U.S. Dist. LEXIS 212808,

at *31 (E.D.N.Y. Nov. 23, 2022) (recommending reduction in senior partner's rate from $450

to $350, in part, because he performed some associate-level work).

Next, plaintiff seeks an hourly rate of $500 for the work of Mr. Trief, who is a senior founding partner at T&O.  See Pl. Mem. at 5, DE #35-1.  Mr. Trief is a "1976 graduate of Rutgers University Law School with over 40 years' experience, including over 100 trials."  Id. Mr. Trief "was admitted to practice before this Court on December 5, 1978," and is admitted to numerous other federal district and appellate courts, as well as the Supreme Court of the United States.  Friedland Decl. ¶ 33, DE #35-2.  He is also a former Assistant District Attorney for Bronx County.  See id.  With respect to this case, plaintiff represents that Mr. Trief "was consulted on a limited number of discrete matters, contributing 5.4 hours to the total hours billed by T&O."  Pl. Mem. at 5, DE #35-1.  Plaintiff later amended this estimation, requesting an additional .5 hours for Mr. Trief's post-trial work.  See Supp. Time Records at 2-3, DE #38-4.

The Court acknowledges Mr. Trief's seniority, decades of experience, and impressive credentials.  While "[c]ourts have 'occasionally awarded hourly rates of $550 and $600 to experienced senior litigators[,] [even] senior FLSA litigators are rarely awarded over $450 per hour.'"  Aly v. Dr. Pepper Snapple Grp., Inc., 18 CV 4230 (FB)(LB), 2019 WL 3388947, at *4 (E.D.N.Y. June 13, 2019) (third alteration by court in Aly) (citation omitted), adopted, 2019 WL 3388925 (E.D.N.Y. July 26, 2019).  Indeed, Mr. Trief's requested rate exceeds the upper range of hourly rates typically awarded to senior partners with comparable experience. See, e.g., Dacas v. Duhaney, 17-CV-3568 (EK) (SMG), 2020 WL 4587343, at *3 (E.D.N.Y. June 18, 2020) (rejecting $625 hourly rate and recommending $400 per hour for senior partner with 40 years' experience in a wage-and-hour case), adopted, 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020); Hernandez v. Delta Deli Mkt. Inc., No. 18-CV-00375 (ARR) (RER), 2019

10

WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (recommending $400 per hour for managing member/partner with 36 years' experience in FLSA case at default judgment stage); Lopez v. Ki Moon Rest. Corp., 17-CV-6078 (LDH), 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021) (recommending $400 hourly rate for founding partner with 30 years' experience, who had "handled more than 350 federal wage-and-hour cases"), adopted, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021).

Defendants argue that Mr. Trief should be awarded $300 per hour, asserting that this is the "standard" and appropriate rate under the present circumstances. See Def. Opp. at 3-4, DE #37. As an initial matter, the Court notes that defendants have again cited no caselaw in support of their position. See generally id. Moreover, defendants' proposed hourly rate for Mr. Trief fails to account for his significant experience as a lawyer both generally and in the labor-and-employment field. The Court also notes that Mr. Trief performed only approximately 6 hours of work on this matter; thus, his respective fees comprise a relatively small portion of the total fee award. See generally Time Records, DE #35-3; Supp. Time Records, DE #38-4. The Court therefore rejects defendants' proposed $300 hourly rate— which is at the lowest end of the range typically awarded to partners in such actions—and instead decreases Mr. Trief's hourly rate from $500 to $450. See, e.g., Pernal v. Proflame Inc., 21 CV 4526 (JMW), 2022 WL 16636689, at *6 (E.D.N.Y. Nov. 2, 2022) (finding $450 hourly rate reasonable for managing partner "who specializes in FLSA and NYLL wage and hour individual, multi-plaintiff, and collective actions"); Rodriguez v. Yayo Rest. Corp., 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *9 (E.D.N.Y. Aug. 23, 2019) (recommending $450 hourly rate for managing member of law firm with 36 years' experience in FLSA/NYLL

case), adopted, 2019 WL 4468054 (Sept. 18, 2019); accord Nam v. Ichiba Inc., 19-cv-1222(KAM), 2021 WL 878743, at *10 (E.D.N.Y. Mar. 9, 2021) ("An hourly rate of $450 remains within the range of rates found reasonable for partners with twenty or more years of experience in this District." (citation omitted)).

### ii. Of Counsel/Senior Counsel

Attorney Jason M. Kaufer also performed work on this matter, which consisted primarily of assisting Ms. Friedland as second chair for the April 22, 2022 bench trial. See Pl. Mem. at 5, DE #35-1. More specifically, Mr. Kaufer provided Ms. Friedland with "valuable support" by "taking the reins for trial prep during Ms. Friedland's first bout of Covid-19[] while she recovered." Id. Mr. Kaufer is currently of counsel at T&O;[8] prior to his employment at T&O, he was a partner at another law firm, Paul B. Weitz & Associates, P.C. See id.; Friedland Decl. ¶¶ 13, 30, DE #35-2. Mr. Kaufer graduated from New York Law School in 1994 and is admitted to the New York State Bar. See Friedland Decl. ¶ 30, DE #35-2. As to his relevant experience, plaintiff represents that Mr. Kaufer "has first chaired at least 20 trials and second chaired approximately 50 trials." Id. Citing the foregoing qualifications, plaintiff seeks $375 per hour for Mr. Kaufer. See Pl. Mem. at 5, DE #35-1.

Defendants, on the other hand, contend that Mr. Kaufer should receive an hourly rate of $135 for attorney work and $90 for paralegal work performed on this matter. See Def. Opp. at 4-5, DE #37. Defendants assert that these decreased hourly rates are warranted due to Mr. Kaufer's "extremely limited" involvement in the case, his "regular[]" performance of "paralegal work[,]" and the fact that his notice of appearance was filed close to trial. Id. at 4.

---

[8] The Friedland Declaration also refers to Mr. Kaufer as "Senior Counsel." See Friedland Decl. ¶ 36 (Chart), DE #35-2.

While the Court agrees that Mr. Kaufer's involvement was relatively limited, it declines to adopt a $135 hourly rate for senior counsel—an hourly rate appropriate for the most junior associates—especially given that defendants once again fail to provide any supporting caselaw on this point.  Senior counsel with Mr. Kaufer's experience of approximately 27 years are typically awarded more than $300 per hour in FLSA/NYLL cases.  Cf. Dominguez v. B S Supermarket, Inc., 13 CV 7247 (RRM), 2015 U.S. Dist. LEXIS 39670, at *38 (E.D.N.Y. Mar. 5, 2015) (recommending $275 hourly rate for senior counsel with only approximately 7 years' experience in FLSA action).  The Court also rejects defendants' assertions (which are devoid of specific citations to the record) that Mr. Kaufer performed "paralegal work" on this case, including "drafting, filing and preparing exhibits[.]"  Def. Opp. at 4, DE #37.  The Court has reviewed T&O's time records and concludes that the majority of Mr. Kaufer's time entries reflect either work appropriately performed by senior counsel or else by an associate; the Court did not, however, find any time entries that reflect work that should have been performed by a paralegal.  See, e.g., Time Records at 11, DE #35-3 (3/14/22 time entry for conducting legal research on "use of transcripts"); id. at 12 (3/22/22 time entry for legal research); id. (3/25/22 time entry indicating time spent reviewing defendants' transcript to "confirm excerpts being used").  The Court therefore reduces Mr. Kaufer's hourly rate from $375 to $325, to account for his having performed some associate-level tasks that were billed at his regular rate.  See Gesualdi, 2022 WL 4238267, at *8.

### iii. Legal Assistants

Finally, plaintiff seeks hourly rates of $150 and $100 for legal assistants Monica Palacios and Grace Mortimer, respectively.  See Pl. Mem. at 6-7, DE #35-1.  At the outset,

the Court notes that defendants have not objected to plaintiff's requested rates for these particular timekeepers.[9]  See generally Def. Opp., DE #37.  Nevertheless, the Court assesses the reasonableness of the proposed hourly rates for T&O's legal support staff.

First, as to Ms. Palacios, plaintiff asserts that an hourly rate of $150 is warranted for her work in this case because she served as a Spanish interpreter between plaintiff and counsel. See Pl. Mem. at 6, DE #35-1.  Ms. Palacios "has close to 30 years of experience" and "is a New York State Court certified Spanish language interpreter[.]"  Id.  "Her expertise includes translating legal documents (such as the client retainer letter and discovery documents) from English to Spanish and the reverse."  Friedland Decl. ¶ 34, DE #35-2.  Lead counsel in this case—Ms. Friedland—represents that "[i]t is not an exaggeration to state that T&O could not have represented [p]laintiff without [Ms. Palacios'] assistance."  Id.

The Court does not doubt the value that Ms. Palacios brought to T&O's representation of plaintiff in this case.  But her requested hourly rate is higher than the $125 per hour typically awarded by courts in this District for legal support staff who perform language interpreter services.  See, e.g., Diaz v. KC Plumbing, LLC, 19 CV 4321 (DLI) (CLP), 2021 WL 7500316, at *15 (E.D.N.Y. Mar. 1, 2021) (finding $125 per hour reasonable for paralegal who "speaks Spanish and assisted in translation during attorney-client meetings, presumably saving the cost of a translator"); Cohetero v. Stone & Tile, Inc., 16-CV-4420 (KAM)(SMG), 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (approving $125 hourly rate for paralegals in light of relevant language skills).  Moreover, in support of his request for $150 per hour for Ms. Palacios, plaintiff has cited only those cases awarding $125 per hour for paralegals who

---

[9] As discussed infra, defendants oppose the amount of costs requested for interpreter services, arguing that these costs are "duplicative" of Ms. Palacios' time charges.  Def. Opp. at 7, DE #37.

provided Spanish interpretation services.  See Pl. Mem. at 6, DE #35-1.  Accordingly, the Court concludes that a $125 hourly rate is likewise appropriate for Ms. Palacios' work in this case.

Ms. Mortimer is comparatively less experienced than Ms. Palacios, having spent only four years working as a legal assistant.  See id. at 7.  The only other information provided about Ms. Mortimer is that she graduated from Fordham University in 2019.  See Friedland Decl. ¶ 35, DE #35-2.  Courts in this District have frequently awarded less than $100 per hour to legal support staff under similar circumstances.  See, e.g., Sun v. Sushi Fussion Express, Inc., 16-CV-4840 (RPK) (LB), 2022 WL 2193441, at *3 (E.D.N.Y. June 17, 2022) (awarding paralegals $75 per hour in FLSA/NYLL case that went to trial); Charles v. Opinion Access Corp., 16-CV-6868 (KAM) (JO), 2020 WL 9812930, at *7 (E.D.N.Y. Mar. 13, 2020) (recommending $75 hourly rate for three paralegals in FLSA/NYLL class action at the settlement-approval stage); accord Ally Fin. Inc. v. Comfort Auto Grp. NY LLC, 20-CV-1281 (MKB) (RLM), 2022 WL 3703955, at *19 (E.D.N.Y. Aug. 26, 2022) (recommending $75 hourly rate for paralegal with four years' experience), adopted, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); Sooroojballie v. Port Auth. of N.Y. & N.J., 1:15-cv-01230 (WFK)(PK), 2020 WL 6149665, at *7 (E.D.N.Y. Sept. 22, 2020) (recommending $70 hourly rate for paralegal with four years' experience), adopted, 2020 WL 6146880 (E.D.N.Y. Oct. 20, 2020).  Given her relative inexperience, the lack of background information provided, and the fact that she was not the sole legal assistant working on this case, the Court awards Ms. Mortimer $75 per hour.

**B.**     **Reasonable Number of Hours**

"The next step [in the lodestar analysis] is to determine the reasonableness of the hours

expended by counsel." Feltzin v. Union Mall LLC, 393 F.Supp.3d 204, 211 (E.D.N.Y.

2019) (citation omitted).   "When considering an application for attorneys' fees, the Court

should exclude 'excessive, redundant, or otherwise unnecessary' hours." Dominic Schindler

Holding, AG v. Moore, 20 Civ. 4407 (RPK) (VMS), 2022 WL 987428, at *9 (E.D.N.Y. Jan.

12, 2022) (quoting Hensley, 461 U.S. at 434).   "[I]n dealing with such surplusage, the court

has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a

practical means of trimming fat from a fee application[.]'" Kirsch v. Fleet St., Ltd., 148 F.3d

149, 173 (2d Cir. 1998) (citation omitted); accord Rosen v. LJ Ross Assocs., Inc., 19 Civ.

5516 (ARR) (VMS), 2022 WL 493728, at *6 (E.D.N.Y. Jan. 24, 2022), adopted, 2022 WL

493274 (E.D.N.Y. Feb. 17, 2022); see Raja v. Burns, 43 F.4th 80, 87 (2d Cir. 2022); Ortiz

v. City of N.Y., 843 F.App'x 355, 360 (2d Cir. 2021).

As discussed *supra*, plaintiff initially requested attorneys' fees for 285.2 hours of work

performed by his counsel and support staff.[10]  See Friedland Decl. ¶¶ 36, 42-43, DE #35-2.[11]

Plaintiff later increased this request by 34.2 hours to account for time spent by his counsel

from September 12, 2022 to October 13, 2022, mostly preparing plaintiff's post-trial fee

application and reply, thereby yielding a total of 319.4 hours (exclusive of travel-related time).

---

[10] Plaintiff also requests attorneys' fees for 11.5 hours of travel time, which is calculated differently than time spent working.  See *infra* pp. 21-22.

[11] While plaintiff's memorandum of law requests fees for 284.6 hours of work performed, see Pl. Mem. at 7, DE #35-1, the Friedland Declaration indicates that, after applying reductions, plaintiff initially requested fees for 285.2 hours, see Friedland Decl. ¶¶ 36, 42-43, DE #35-2; T&O's original time records also reflect 285.2 hours, see Time Records at 15, DE #35-3.  The Court therefore assumes that counsel made a scrivener's error in preparing plaintiff's memorandum of law, and utilizes the 285.2-hour figure in assessing the reasonable number of hours.

See Pl. Reply at 10-11, DE #38.  Plaintiff has provided the Court with the contemporaneous time records for the T&O timekeepers who worked on this matter.  See generally Time Records, DE #35-3; Supp. Time Records, DE #38-4.  Counsel represents that the firm has excluded from these records those "time entries (and corresponding charges) for administrative tasks, duplicative entries, and the time for Mr. Kaufer to get up to speed on the case background[,]" as well as "time recorded by Barbara Olk, Of Counsel (now retired), whose hours were de minimus."  Friedland Decl. ¶ 42, DE #35-2.

As an initial matter, the time that counsel spent on "post-trial work" is somewhat excessive.  Specifically, Ms. Friedland spent almost 35 hours preparing plaintiff's fee application and related submissions; approximately 10 of these hours were expended on drafting the Reply alone.  See Pl. Reply at 10-11, DE #38; Time Records at 15, DE #35-3; Supp. Time Records at 3, DE #38-4.  While the "Second Circuit has held that [a] plaintiff is entitled to attorney's fees for time reasonably spent in preparing and defending his initial fee application[,]" the hours requested must nevertheless be reasonable.  Anderson v. Cnty. of Suffolk, CV 09-1913 (GRB), 2016 WL 1444594, at *9 (E.D.N.Y. Apr. 11, 2016) (citation omitted).

Plaintiff's counsel contends that, "to the extent the party liable expends great effort to avoid paying the amount owed, that party cannot complain about excessive fees incurred by the opposing party in enforcing the judgment[,]" thereby implying that her expenditure of time on the fee application was necessitated by defendants' inordinate efforts to avoid payment of attorneys' fees.  Pl. Reply at 6 n.9, DE #38.  On the contrary, defense counsel can hardly be said to have expended "great effort" in drafting defendants' Opposition to plaintiff's request

for attorneys' fees and costs: that Opposition cites virtually no specific caselaw to support their demand that plaintiff's counsel's hourly rates be drastically reduced; the Opposition also includes several baseless assertions devoid of any supporting record citations, such as defendants' contention that Ms. Palacios served as the interpreter for all language services. See, e.g., Def. Opp. at 7, DE #37.  Given defendants' minimal level of effort in contesting the instant motion, Ms. Friedland need not have dedicated 15 pages and hours of additional research to draft plaintiff's Reply.  Under these circumstances, the total time spent on the fee application represents an inefficient and excessive expenditure of counsel's time.  Cf. Luca v. Cnty. of Nassau, 698 F.Supp.2d 296, 306 (E.D.N.Y. 2010) (although defendant failed to challenge time spent by plaintiff's counsel preparing reply in connection with supplemental fee application, court finds that 50 hours is excessive and reduces that number by half); Johnson v. City of N.Y., 11-CV-06176 (ENV) (CLP), 2016 WL 590457, at *7 (E.D.N.Y. Feb. 11, 2016) (reducing number of hours spent preparing fee application from 40 to 30).

The Court has reviewed T&O's contemporaneous time records and concludes that, apart from the excessive number of hours devoted to plaintiff's fee application, the amount of time spent by plaintiff's counsel in this case was generally reasonable, with a few exceptions. Specifically, the time records reflect numerous instances of block-billing, which "makes it difficult if not impossible for [the Court] to determine the reasonableness of the time spent on each of the individual services or tasks provided." Marshall v. Deutsche Post DHL, No. 13–CV–1471 (RJD)(JO), 2015 WL 5560541, at *12 (E.D.N.Y. Sept. 21, 2015) (internal quotation marks and citation omitted) (collecting cases).  For example, the time records indicate that, on March 23, 2022, Ms. Friedland spent 5.5 hours making "additional edits to [her] Aponte direct

outline[,]" "draft[ing her] opening statement[,]" "review[ing] dep[osition] cites for [the] Kassim cross-exam[ination,]" and "review[ing a] cross[-examination] outline"; this time entry does not specify how the 5.5 hours were allocated amongst these four tasks, thereby impeding the Court's ability to assess the reasonableness of the time spent.  Time Records at 12, DE #35-3; see also id. at 9 (12/3/21 time entry for Ms. Mortimer that includes seven different tasks); id. at 10 (3/3/22 time entry for Ms. Friedland combines time spent reviewing notes from pre-trial conference and drafting a memo to a colleague); see Supp. Time Records at 2, DE #38-4 (9/14/22 time entry: "draft supporting declaration, review time entry tallies, prepare spreadsheets, draft supporting brief").  Given these additional issues, the Court applies a 10 percent across-the-board reduction to counsel's compensable hours.  See, e.g., Dagostino v. Comput. Credit, Inc., 238 F.Supp.3d 404, 417-18 (E.D.N.Y. 2017) (Bianco, J.) (block-billing and excessive time entries warranted 15 percent reduction); accord SourceCode Commc'ns LLC v. In-telligent LLC, 21-CV-10519 (VSB) (RWL), 2022 WL 1946260, at *8 (S.D.N.Y. May 25, 2022) (recommending 10 percent across-the-board reduction for block-billing and ambiguous time entries); see also Capital One, N.A. v. Auto Gallery Motors, LLC, 2:16-CV-6534 (PKC) (SIL), 2020 WL 423422, at *5 (E.D.N.Y. Jan. 27, 2020) ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." (internal quotation marks and citation omitted)); 246 Sears Rd. Realty Corp. v. Exxon Mobil Corp., 09-CV-889 (NGG) (JMA), 2013 U.S. Dist. LEXIS 120506, at *22-23 (E.D.N.Y. July 26, 2013) (applying 5 percent reduction to hours requested in attorneys' fees application because "the amount of time [ ] counsel expended on the motion, while far from patently unreasonable, was slightly

excessive"), <u>adopted</u>, 2013 U.S. Dist. LEXIS 119565 (E.D.N.Y. Aug. 20, 2013); accord

Auto. Club of N.Y., Inc. v. Dykstra, No. 04 Civ. 2576(SHS), 2010 WL 3529235, at *4

(S.D.N.Y. Aug. 24, 2010) (imposing 10 percent reduction where, *inter alia*, "attorneys spent

what appears to be excessive time on particular tasks").

Defendants assert that plaintiff's total hours should be reduced by 40 percent in order to

"trim the excessive and unreasonable hours requested in [p]laintiff's contemporaneous attorney

records." Def. Opp. at 5, DE #37. But this argument is contrary to the Second Circuit's

recent opinion in Raja v. Burns, which reversed as unjustified the district court's across-the-

board fee reduction of 40 percent for block-billing as well as vague time entries. See 43 F.4th

at 86. Moreover, in advocating such an extreme reduction, defendants fail to provide any

specific examples of entries that reflect a pattern of "vague, duplicative, excessive, and

unreasonable" billing that would warrant the kind of drastic discount rejected by the Court of

Appeals in Raja. Def. Opp. at 7, DE #37.

In sum, having considered the parties' arguments and examined the relevant documents,

the Court imposes an overall reduction of 10 percent (exclusive of travel time).[12] See, e.g.,

Marshall, 2015 WL 5560541, at *11-13 (in FLSA case, applying 10 percent across-the-board

reduction in hours to account for excessive/duplicative and/or vague time charges and block-

billing); accord Song v. 47 Old Country, Inc., 09-cv-5566 (LDW)(SIL), 2015 WL 10641286,

at *6 (E.D.N.Y. Oct. 1, 2015) ("Rather than scrutinizing the propriety of each individual time

entry, the Court recommends an across-the-board percentage cut to account for excessive,

---

[12] By reducing plaintiff's counsel's hourly rates to account for the fact that Ms. Friedland and Mr. Kaufer overbilled for associate-level work, the Court has obviated the need to address this issue by further reducing their compensable hours.

duplicative, or otherwise improper billing." (citations omitted)), adopted, 2016 WL 1425811 (E.D.N.Y. Mar. 31, 2016).

Multiplying the adjusted hourly rates set forth above by the adjusted hours expended by each attorney, the Court calculates plaintiff's attorneys' fees as follows:

| Position | Timekeeper | Adjusted Hourly Rate | Adjusted Number of Hours[13] | Total Fees Per Timekeeper |
|---|---|---|---|---|
| Partners | Shelly L. Friedland | $350 | 195.21 | $68,323.50 |
| | Ted Trief | $450 | 5.31 | $2,389.50 |
| Of Counsel | Jason M. Kaufer | $325 | 33.12 | $10,764 |
| Support Staff | Monica Palacios | $125 | 29.16 | $3,645 |
| | Grace Mortimer | $75 | 24.66 | $1,849.50 |
| **Total Fees for Work Performed** | | | | **$86,971.50** |

## C.   Travel Time Expended

In addition to requesting attorneys' fees for time spent litigating this case, plaintiff seeks compensation for 11.5 hours in travel time, at 50 percent of the firm's "standard hourly rate[s.]"  Friedland Decl. ¶ 22, DE #35-2; see id. ¶ 36 (Travel Time Chart); Time Records at ECF p. 17, DE #35-3 (requesting fees for time spent traveling to the courthouse for appearances).  Plaintiff thus concedes, as he must, that "[c]ourts in this Circuit award attorney hours spent on travel at 'only 50 percent of the attorney's [or paralegal's] otherwise approved rate.'"  Lin v. Joe Japanese Buffet Rest. Inc., 17 CV 3435 (WFK) (CLP), 2022 WL 2718584, at *8 (E.D.N.Y. June 7, 2022) (collecting cases), adopted, 2022 WL 2716487 (E.D.N.Y. July

---

[13] Plaintiff requested the following hours for each timekeeper (excluding travel time): 216.9 for Ms. Friedland; 5.9 hours for Mr. Trief; 36.8 hours for Mr. Kaufer; 32.4 hours for Ms. Palacios; and 27.4 hours for Ms. Mortimer.  See Friedland Decl. ¶ 36 (Time Record Chart), DE #35-2; Supp. Time Records at ECF p. 2, DE #38-4.

13, 2022); see Sooroojballie, 2020 WL 6149665, at *7-8 (awarding travel time at 50 percent of

the given hourly rates for both attorneys and paralegals).  Compensable travel time may

include time spent traveling to "conferences, hearing[s], and other appearances."  Chauca v.

Park Mgmt. Sys., LLC, NO. 10-CV-05304 (ENV) (RER), 2016 WL 8117953, at *5

(E.D.N.Y. July 18, 2016) (collecting cases).

Accordingly, the Court awards 50 percent of T&O's adjusted hourly rates for the

requested 11.5 hours of travel time for the following timekeepers:

| Position | Timekeeper | Number of Hours[14] | 50 percent of Adjusted Hourly Rate | Total Travel Fees Per Timekeeper |
|---|---|---|---|---|
| Of Counsel | Jason M. Kaufer | 4.2 | $162.50 | $682.50 |
| Support Staff | Monica Palacios | 2 | $62.5 | $125 |
| | Grace Mortimer | 5.3 | $37.5 | $198.75 |
| **Total Travel Fee Award** | | | | **$1,006.25** |

In sum, the Court awards plaintiff a total of $87,977.75 in attorneys' fees for work

performed on the case and for travel time ($86,971.50 in work-related fees + $1,006.25 in

travel fees = $87,977.75 total fees).[15]

---

[14] See Friedland Decl. ¶ 36 (Travel Time Chart), DE #35-2.

[15] The fact that the adjusted fee amount exceeds the damages award to plaintiff does not render it unreasonable. "Neither the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020).  As the court explained in Cabrera v. Schafer:

[A]lthough the fee must be reasonable, it need not be proportional to the recovery since "[t]he purpose of the FLSA attorney fees provision is to in[s]ure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees ... encourage[s] the vindication of congressionally identified policies and rights."

(footnote continued)

## II.    Costs and Expenses

Plaintiff further seeks to recover $9,306.60 in costs and expenses, consisting of the following: a $400 filing fee; $511 in process server fees; $300 mediation fee; $5,951 for language interpreter services; $2,021.99 for court reporter services; $121.41 in Federal Express ("FedEx") charges; and $1.20 in PACER fees.  See Pl. Mem. at 8-9, DE #35-1.

Generally, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendants, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), as long as those costs are tied to "[i]dentifiable, out-of-pocket disbursements," Fan v. Jenny & Richard's Inc, 17-CV-6963 (WFK), 2019 WL 1549033, at *15-16 (E.D.N.Y. Feb. 22, 2019) (alteration in original) (citation omitted), adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  All of the costs requested by plaintiff—except for the PACER fees[16]—are routinely recoverable.  See, e.g., Hanover Ins. Co. v. D'Angelo, CV 13-4301 (JMA)(ARL), 2018 WL 2729248, at *2 (E.D.N.Y. Mar. 23, 2018) ("Court filing fees, process servers, . . . messenger services, [and] postage . . . are generally recoverable[.]" (internal quotation marks and citation omitted)), adopted, 2018 WL 2727878 (E.D.N.Y. June 6, 2018); Tacuri v. Nithin Constr. Co., No. 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *15 (E.D.N.Y. Feb. 24, 2015) ("[I]nterpretation services are a recoverable cost." (collecting cases)); Aiello v. Town of

---

CV 12-6323 (ADS) (AKT), 2017 WL 9512409, at *4 (E.D.N.Y. Feb. 17, 2017) (second, fourth, and fifth alterations by court in Cabrera) (citation omitted) (collecting cases), adopted, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017).

[16] Courts treat "PACER fees in the same manner as they have treated computerized research, i.e., as part of a firm's overhead and not reimbursable." Div. 1181 Amalgamated Transit Union — N.Y. Emples. Pension Fund v. B & M Escorts, Case No. 16-cv-2498 (SFJ)(SIL), 2019 U.S. Dist. LEXIS 226162, at *19 (E.D.N.Y. Mar. 7, 2019) (internal quotation marks omitted) (quoting Cardoza v. Mango King Farmers Mkt. Corp., No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *19 (E.D.N.Y. Sept. 1, 2015), adopted, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).  The Court therefore excludes from plaintiff's award of costs and expenses the requested $1.20 in PACER fees.

Brookhaven, No. 94-CV-2622 (FB)(WDW), 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005) ("Court reporter services are reimbursible [*sic*] costs." (citation omitted)); Li v. HLY Chinese Cuisine Inc., 18-CV-5077 (MMH), —F.Supp.3d—, 2022 WL 1597302, at *8 (E.D.N.Y. Mar. 31, 2022) ("Most of these costs are fair and reasonable and reflect common expenses in wage-and-hour cases in this district—for example, [ ] mediation fees, federal court filing costs, and deposition costs[.]" (citation omitted)).

"However, it is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents showing such costs were incurred." Singh, 2019 WL 4861882, at *11 (citations omitted).  In support of his request, plaintiff has provided the Court with a spreadsheet detailing the amounts, dates, and payment methods for all of the incurred costs.  See Pl. Mem., Exhibit F (Expenses) (docketed on Sept. 16, 2022) ("Expenses") at ECF pp. 3-4, DE #35-8.  He has also provided individualized receipts for nearly all of the aforementioned expenses.  See id. at 5-25.  For example, plaintiff has proffered invoices from three process server companies—United Process Service, Inc., PM Legal, LLC, and Lexitas—that collectively reflect a total of $511 in process server fees.  See id. at 6-9.

The Court has reviewed plaintiff's supporting documentation and confirmed that the amounts requested for the filing fee, process server fees, mediation fee, language interpreter services, and court reporter services are accurate; accordingly, the Court concludes that these specific recoverable costs have been adequately substantiated.  Plaintiff's documentation, however, does not entirely support counsel's assertion that the firm incurred $121.41 in FedEx expenses, and is also internally inconsistent.  In particular, T&O's "Expenses" spreadsheet

24

shows entries totaling the requested $121.41 in FedEx mailings, whereas the proffered FedEx receipts reflect only $103.19 in such carrier costs.  Compare Expenses at ECF pp. 3-4 (Expenses Spreadsheet), DE #35-8, with id. at 18-24 (FedEx Receipts).  The Court therefore awards the lesser amount ($103.19), as this figure is supported by the FedEx-generated receipts provided by plaintiff.  See Vidyashev v. Visual ID Source, Inc., 18-cv-3117 (JS)(SIL), 2021 WL 4925733, at *5 (E.D.N.Y. Sept. 28, 2021) ("In the absence of invoices, receipts or other documentary proof of the costs sought, however, courts decline to award costs." (collecting cases)), adopted, 2021 WL 4902528 (E.D.N.Y. Oct. 21, 2021).

Defendants object to plaintiff's demand for reimbursement of $5,951 in costs for language interpreter services.  See Def. Opp. at 7, DE #37.  More specifically, defendants argue that, "[u]pon information and belief, the interpreter used was Ms. Monica Palacios[,] a legal assistant at [p]laintiff's attorney's firm[,]" and that therefore, plaintiff's request for fees for work performed by Ms. Palacios, combined with plaintiff's application for reimbursement of interpreter costs, constitutes "duplicative billing."  Id.  Plaintiff disputes defendants' conclusory assertions, arguing that the record clearly reflects that Ms. Palacios' Spanish interpreter services were used only to facilitate attorney/client communications, and that plaintiff utilized certified interpreters from a separate company (Veritext) for Spanish and Arabic interpretation during depositions and at trial, "where independence from the witness is required."  Pl. Reply at 10, DE #38.

The Court has examined plaintiff's documentation with respect to the costs incurred for language interpreters and concludes that defendants' assertions regarding Ms. Palacios' billing, made on "information and belief," are baseless.  First, as plaintiff correctly points out, Ms.

Palacios is a *Spanish* interpreter and therefore could not have rendered Arabic interpreter services for non-party witness Al Sakhadi—accounting for $3,333 of $5,951 in Veritext charges.  See Expenses at ECF pp. 11-12, 14 (Veritext Invoices), DE #35-8.  In addition, the Veritext invoices proffered by plaintiff clearly show that plaintiff's counsel was charged by Veritext for language interpreter services that were performed at depositions and trial.  See, e.g., id. at 14 (Veritext invoice for state-certified Spanish and Arabic interpreters for all-day rates).[17]  Contrary to defendants' suggestion, both the Court's Minute Entry and transcript of the April 22, 2022 bench trial reflect that Raul Zambrano, a state-certified Spanish interpreter, provided interpreter services for that trial, which is the only occasion for which plaintiff is requesting reimbursement of costs (in the amount of $2,618) for Spanish interpretation.  See 4/22/22 Minute Entry at 1, DE #29; Transcript of Bench Trial held on April 22, 2022 at 3. The Court therefore credits plaintiff's counsel's representations that T&O did not double bill for interpreter services, and awards plaintiff the requested $5,951 for these costs.  See Expenses at ECF pp. 11-14 (Veritext Invoices), DE #35-8.

In sum, the Court awards plaintiff $9,287.18 in costs related to the litigation of this action ($9,306.60 total requested costs − ($1.20 PACER fees + $18.22 unsupported FedEx charges)).

---

[17] T&O's time records do reflect that Ms. Palacios attended plaintiff's deposition and trial.  See Time Records at 5, 14, DE #35-3.  First, even assuming *arguendo*, that Ms. Palacios (a legal assistant) performed translation services at plaintiff's deposition, none of the Veritext invoices for which plaintiff seeks reimbursement relate to that deposition, as to which defendants, as the examining parties, were responsible for providing independent interpreter services; thus, there is no "duplicative billing" in this regard.  See generally Expenses at ECF pp. 11-14 (Veritext Invoices), DE #35-8.  Moreover, as discussed above, the record reflects that a different interpreter (Raul Zambrano) performed Spanish interpretation services for plaintiff during the trial.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants plaintiff's motion in part, and awards him $87,977.75 in attorneys' fees and $9,287.18 in costs and expenses. The Clerk is respectfully requested to enter judgment consistent with this M&O. The Court further requests that the Clerk close this case.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**December 15, 2022**

/s/  ***Roanne L. Mann***
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

27